UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROSE DIAZ CORDES, as Executrix and Personal Representative of Robert C. Cordes and R. ZACHARY CORDES<br>            Plaintiff<br>v.<br>M/V *BALDOCK,* her engines, tackle, equipment, apparel, and appurtenances, etc, *in rem;* and FB SHIPPING (II), INC., *in personam*<br>            Defendants | CIVIL ACTION NO. |

**VERIFIED COMPLAINT**

Plaintiffs, the family of decedent Robert C. Cordes (collectively "Plaintiffs"), respectfully file this Verified Complaint and sue the defendant, M/V *Baldock*, her engines, tackle, equipment, apparel and appurtenances, etc., *in rem*, and her owners FB SHIPPING (II) Inc. ("FB"), *in personam*, to recover losses incurred by reason of the death of Robert C. Cordes, caused by the defendants' negligence and other actionable conduct, misconduct, and omissions, as further amplified below.

**PARTIES AND PROCEDURAL MATTERS**

1.      Plaintiff, R. Zachary Cordes is the son of the decedent, Robert C. Cordes.  Plaintiff, Rose Diaz Cordes is the mother of R. Zachary Cordes, and is the personal representative and executrix of the estate of the decedent Robert C. Cordes ("Captain Cordes"), all citizens of Massachusetts.

2.      *In rem* defendant, Motor Vessel *Baldock* (the "*Baldock*" or the "Vessel") is a bulk cargo vessel bearing IMO Number 7926148, and gross tonnage of about 46068, and an overall length of about 802 feet, all as listed by the Coast Guard's Port State Information Exchange website.  As used here, and for purposes of plaintiffs' remedy, the term *Baldock*, or "the Vessel," embraces the defendant vessel herself, together with her engines, masts, rigging, tackle, machinery, and all

appurtenances and apparel, accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom.

3. Upon information and belief, FB SHIPPING (II) Inc. ("FB") was the owner and operator of the vessel at the time of the incident, and a citizen or subject of a foreign state.

4. As against M/V *Baldock*, this is a complaint *in rem* with a prayer for process of arrest of the vessel pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and to that extent is an admiralty and maritime claim within the meaning of Rule 9(h) Federal Rules of Civil Procedure. As against M/V *Baldock,* this Court's jurisdiction is afforded by 28 U.S.C. §1333.

5. As against FB, this Court's jurisdiction is afforded by 28 U.S.C. §1332, diversity of citizenship, inasmuch as FB is a citizen or subject of a foreign state, while all of the plaintiffs are citizens and residents of Massachusetts.

6. Venue of this case is proper in this District, inasmuch, *inter alia*, as the events took place within this District.

**FACTS**

7. The *Baldock* was moored in Chelsea, Massachusetts on or about October 24, 2006, at the facilities of Eastern Minerals, a location at which she had discharged a cargo of salt.

8. The Vessel called for a pilot to assist her in proceeding to sea. Pilotage was compulsory for a vessel of her tonnage. Plaintiffs' decedent Captain Cordes was a Boston Pilot, commissioned by the Commonwealth of Massachusetts, and was dispatched to the job.

9. An accommodation ladder is a permanently-fitted fixture of such a vessel, and has a diagonal rise, resembling a set of stairs, and is the standard method for boarding a vessel under these circumstances. The Vessel was required to be fitted with one or more accommodation ladders, and was so equipped.

10. Eastern Minerals had offered the Vessel the opportunity to arrange its position at the facility in such a way to allow the Vessel's accommodation ladder to be used for persons boarding or leaving the vessel by way of the shore. The Vessel declined this offer.

11. Captain Cordes arrived at the Eastern Minerals facility, and approached the Vessel from the shore. He asked to have an accommodation ladder made available to him to board the vessel. The vessel failed or refused to comply with this request.

12. Despite the fact that the Vessel could have made alternative and proper means available, the vessel provided Captain Cordes with no means of boarding the vessel, other than boarding by way of a vertical ladder, consisting of horizontal slats connected by flexible vertical connections, sometimes otherwise known as a "Jacob's Ladder," or pilot ladder. The approach to this Jacob's Ladder was from a barge at the Eastern Minerals facility, inshore of the Vessel.

13. The ladder was rigged down the side the vertical side of the vessel at a time when her freeboard — as well as the distance from the barge to the top of the ladder — was greater than nine meters. No sideport, accommodation ladder, or supplemental platform was made available in conjunction with the Jacob's Ladder as required under those circumstances.

14. No means of fall protection was provided

15. It was feasible, reasonable, prudent, and proper to provide fall protection.

16. The ladder was rigged in such a way that its upper extent did not lead to opening in the rail of the vessel, but instead was rigged so as to oblige a person ascending it to climb over the top rail of the Vessel, with the effect that the height of the climb that a person on the ladder was obliged to make was thereby increased.

17. There were no railings or handholds extending above the top of the ladder to assist a person on the ladder in making his way over top of the rail at the top of the ladder.

18. The ladder was not uniform and continuous as required, but instead consisted of a short section of ladder of approximately four rungs leading to the top of the rail, supplemented by separate ladder section below the first, that extended down the side of the vessel. The upper section of the ladder was capable of swinging away from the side of the Vessel — independently of the lower section — when grasped by a person climbing the ladder.

19. The non-continuous arrangement required an individual ascending the ladder to make a transition from the longer, lower section, to the shorter, upper section after having already made an extended climb from the surface of the barge below.

20. The ladder was not provided with man-ropes, extending along the sides of the ladder.

21. The rungs or slats of the ladder were not properly aligned in a horizontal plane.

22. The ladder was rigged in a manner at odds with the Safe Working Practices of the Vessel's own Safety and Environmental Manual in several respects, including the following mandate contained in that document, specifically: "PILOT LADDERS ARE TO BE USED SOLELY FOR THE PURPOSE OF SAFE ACCESS FROM THE WATER TO THE SHIP. THEY MUST NOT BE USED FOR ANY OTHER PURPOSE." The Ladder was not being used for access from the water to the ship, but instead for access from the hard and unyielding surface of the barge.

23. The foregoing conditions were unreasonably dangerous.

24. FB was in a position to direct, specify, and call for compliance with appropriate safety measures that should have been employed by the Vessel, and on information and belief was the employer of and/or was otherwise responsible for the conduct of the master and crew of the Vessel, and was accordingly legally responsible for the conditions, actions, omissions, and failures aforesaid.

25. Faced with the lack of any alternative means of boarding the Vessel — which he was duty-bound to conduct to sea as a compulsory pilot commissioned by the Commonwealth of

4

Massachusetts — Captain Cordes began to climb the improperly-rigged pilot ladder provided by the Vessel.

26. As a result of the defendants' improper conduct, the lack of proper access, and the improper rigging of the ladder, etc. shortly before reaching the top of the improperly-rigged Jacob's Ladder, Captain Cordes fell from the pilot ladder to the barge below, a distance of approximately 30 feet, sustaining an impending fear of death, and an impact that resulted in devastating injuries, pain and suffering, and his death, for all of which the plaintiffs are entitled to recover.

27. The plaintiffs have been additionally harmed in being deprived of the expected net income, services, protection, care, assistance, society, comfort, guidance, counsel, advice, support, consortium, and companionship of Captain Cordes, and in bearing the burden of his funeral and burial expenses, and the resolution of his affairs.

28. <u>Exhibit A</u> is a true and accurate copy of a Letter of Undertaking, provided to the plaintiffs by the marine insurer of the *Baldock*. In <u>Exhibit A</u>, in exchange for the forbearance of the plaintiffs from arresting and detaining the *Baldock*, the aforesaid insurer agreed, among other things: (1) to submit the adjudication of plaintiffs' dispute to the jurisdiction of this honorable Court; and (2) pursuant to its terms, to satisfy any judgment in favor of the plaintiffs arising out of these proceedings.

29. Any conditions precedent to the commencement of this action have been satisfied.

**Count I**
(Negligence)

30. Plaintiffs repeat and reallege the averments of the foregoing paragraphs as if set forth here at full length.

31. Defendants owed a duty to Captain Cordes to provide safe access to the vessel. Defendants breached said duty. The improper and negligent conduct of the defendants caused the aforesaid damage to Captain Cordes and the plaintiffs.

5

32. Accordingly, Plaintiffs are entitled to recover judgment against the defendants.

## Count II
(Unseaworthiness)

33. Plaintiffs repeat and reallege the averments of the foregoing paragraphs as if set forth here at full length.

34. The Vessel and FB owed an undelegable duty to provide Captain Cordes with a seaworthy vessel.

35. By reason of the conditions previously alleged, the *Baldock* was not reasonably fit for her intended use and was therefore unseaworthy.

36. The unseaworthiness of the defendant vessel as aforesaid caused the aforesaid damage to Captain Cordes and the plaintiffs.

37. Accordingly, plaintiffs are entitled to recover judgment against the defendants.

## Count III
(Wrongful Death and Punitive Damages)

38. Plaintiffs repeat and reallege the averments of the foregoing paragraphs as if set forth here at full length.

39. The improper conduct of the defendants caused the death of a person within the contemplation of the Massachusetts Wrongful Death Statute, General Laws chapter 229 §2.

40. The conduct of the defendants was grossly negligent and/or reckless, for which reason plaintiffs are entitled to an award of punitive damages pursuant to Massachusetts General Laws chapter 229 §2.

## Relief

41. By reason of the foregoing, Plaintiffs are entitled and authorized to exercise against the defendant Vessel rights of maritime lien arising from maritime tort, and are entitled to judgment against all defendants in an amount to be determined at trial.

WHEREFORE Plaintiffs pray for orders as described below and demand judgment in their favor as follows:

(a) That a warrant issue for the arrest of the vessel *Baldock*, its engines, machinery, equipment, etc., with notice, if necessary, under Rule C(4) of the Admiralty Rules, citing all persons claiming an interest therein to appear and answer this Complaint, and that appropriate orders issue for the carrying out of the steps necessary under the Admiralty Rules for the arrest, relocation, keeping, advertising, auction, and disposition of the Vessel;

(b) That the rights of Plaintiffs be declared a valid and subsisting maritime lien on the vessel *Baldock*, together with her engines, masts, rigging, tackle, machinery, appurtenances and apparel, accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, with a lien priority superior to the interests, liens and claims of all others whatsoever;

(c) That the vessel *Baldock*, her engines, machinery, equipment, etc., be arrested and then condemned and sold by order of this Honorable Court and Plaintiffs be paid forthwith from the proceeds of such sale;

(d) That it be decreed that any and all persons, firms, or corporations claiming any interest in the vessel *Baldock* arising prior to its sale by this Court are thereafter forever barred and foreclosed from all right, including any equity of redemption claim, in or to the vessel *Baldock*, and every part thereof, or any proceeds from the sale of said vessel by reason of any such interest;

(f) That this Court shall direct the manner in which actual notice of the commencement of this suit shall be given by Plaintiffs to the master, other ranking officer or caretaker of said defendant Vessel, and to any persons, firms or corporations having any interest therein;

(g) That judgment enter in favor of Plaintiffs against the *Baldock* (and/or the proceeds of her sale) *in rem* in an amount to be established by the proof at trial, TOGETHER WITH interest, costs of collection and suit, costs of arrest and keeping the Vessel (including without limitation all fees paid to the USMS)(if any), or in such amount as may later be made to appear at trial or hearing;

(h) That judgment enter in favor of Plaintiffs against the *in personam* defendant in an amount to be established by the proof at trial, TOGETHER WITH interest, costs of collection and suit, in such amount as may later be made to appear at trial or hearing; *and*

(i) That Plaintiffs may have such other and further relief as the justice of their cause may require.

## Jury Demand

Plaintiffs demand trial by jury as to all counts so triable.

Dated:  October 23, 2009
                                                       **R. ZACHARY CORDES AND ROSE DIAZ CORDES**
By their attorneys,

                                              /s/ Michael J. Rauworth
Michael J. Rauworth, BBO# 547711
**CETRULO & CAPONE LLP**
World Trade Center East — 10th Floor
Two Seaport Lane
Boston, Massachusetts 02210
Tel: (617) 217-5219; fax: 617-217-5200

## VERIFYING DECLARATION

Rose Diaz Cordes gives the following declaration pursuant to 28 U.S.C §1746:

1. I am the executrix of the estate of Robert Cordes and its personal representative.

2. I have read the allegations of the foregoing complaint, and state that they are true and correct to the best of my knowledge.

I declare under penalties of perjury that the foregoing is true and correct.  Executed this 23rd day of October, 2009 at Winthrop, Massachusetts.

                                                      /s/
                                            Rose Diaz Cordes